# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHERRY G. LUCAS,

Plaintiff,

v.

MEGAN J BRENNAN, Postmaster
General of the United States

Defendant.

Case No. 17-cv-8964

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Sherry Lucas ("Lucas"), who is proceeding *pro se*, brought this lawsuit against Defendant Megan J. Brennan, the Postmaster General of the United States ("the Postal Service"), alleging race, gender, and age discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.* The Postal Service argues that it is entitled to summary judgment because Lucas cannot establish a *prima facie* case of discrimination or retaliation on any of her claims. For the reasons stated below, the Postal Service's motion for summary judgment [39] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a

1

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.,* 870 F.3d 562, 568 (7thCir. 2017) (citations and quotation marks omitted).

## FACTUAL BACKGROUND

In May of 2016, Lucas, an African-American female, was terminated from her job at the Postal Service where she had worked for approximately 18 years.[1] She was 55 years old at the time of her termination. She began working with the Postal Service in 1998 as a part-time flexible mail handler. She was promoted to an associate supervisor position in 2001 and then to a supervisor position in 2003. In 2006, Lucas was promoted to the position of Manager of Customer Service in Gary, Indiana Post Office and reported to Dwayne Russell. In March of 2013, the National Association of Letter Carriers (NALC) filed a class action grievance against the Postal Service alleging violations of various articles of the NALC National Agreement, the Joint Statement on Violence and Behavior in the Workplace and sections of the Employee Labor Relations Manual due to Lucas' conduct towards her staff. In February 2014, the NALC class action was settled in a pre-arbitration settlement agreement. The agreement was conditioned upon Lucas making "a public apology to letter carriers in the Gary office acknowledging her behavior is not acceptable and a pledge to change her approach in treatment of fellow human beings." (Dkt. 40-2 at 3). Lucas refused to make the apology and was told on multiple occasions by the Labor Relationship Specialist, the Acting Postmaster and the Acting Manager of Post Office Operations that she was required to deliver the apology as written by the arbitrator. After her continued refusal, she was issued a notice of proposed removal. Her removal was effective on May 27, 2016. Lucas filed an appeal with the Merit Systems Protection Board ("MSPB") challenging her removal from the Postal Service. In March 2017, the

---

[1] The undisputed facts are taken from the Postal Service's Local Rule 56.1 statement of material facts [40] and attending Exhibits, to which Lucas offered no response.

MSPB upheld Lucas' termination. Lucas has appealed that decision; her appeal is currently pending before the MSPB. Lucas' termination from the Postal Service is not at issue in this lawsuit.

Pending before this Court are Lucas' allegations that beginning in August of 2010 while working for the Postal Service she was subjected to sexual harassment, retaliation, discrimination, and hostile work environment on the basis of her race, gender and age. Lucas filed a formal Equal Employment Opportunity ("EEO") complaint in October of 2011 alleging fourteen separate incidents of discrimination and retaliation between August of 2010 and September 2011. These claims include: (1) On or around August 4, 2010, Lucas's immediate supervisor, Dwayne Russell ("Russell"), made a comment regarding Lucas's breasts; (2) On September 14, 2010, Lucas was temporarily moved to a night shift and did not receive night differential pay; (3) On October 20, 2010, Lucas was assigned a "retail count" while she was approved for leave under the FMLA; (4) Lucas was subject to an investigative interview covering three topics in November 2010; (5) Lucas requested sick leave for November 4, 2010, but her time was input incorrectly and was not corrected; (6) Lucas's requests to meet with Russell and Post Office Operations Manager David Conwell ("Conwell") were ignored; (7) Lucas was falsely accused by Russell of calling a co-worker a bitch; (8) Lucas was issued a letter of warning on November 24, 2010; (9) Lucas was placed in an unfavorable assignment starting March 28, 2011; (10) Lucas applied for two postings for the vacancy of Postmaster East Chicago but was not granted an interview for either announcement; (11) Lucas was denied a request

for personal leave in September 2011 and was denied her requested weeks for annual leave in July 2011; (12) Lucas was issued letters of concern in November and December of 2010 and January of 2011; (13) Lucas was accused of breaking a photo copier in December 2010; and (14) on two dates in September 2011, Lucas worked but was not paid.  (Dkt. 40 at 4–5; Dkt. 40-7 at 1–2). The Final Agency Decision issued on May 1, 2015 found no discrimination; this decision was affirmed by the EEO Office of Federal Operations on May 15, 2017.

Lucas filed a second EEO complaint on July 12, 2014, alleging five separate instances of discrimination. This complaint was dismissed on June 30, 2015 as untimely because Lucas failed to initiate contact with an EEO Counselor within 45 days of the allegedly discriminatory action as provided by 29 C.F.R. §1614.105(a)(1). (Dkt. 40-34). This decision was affirmed on May 2, 2017 (Dkt. 40-35).

Lucas filed this action on December 13, 2017, claiming that the Postal Service discriminated against her in violation of Title VII and the ADEA and that the Postal Service retaliated against her in violation of Title VII for her prior EEO activity.

## ANALYSIS

### I.     Compliance with Local Rule 56.1

As an initial matter, Lucas did not respond to the Postal Service's Local Rule 56.1 statement of facts. Therefore, the Postal Service's uncontested facts are deemed admitted. (Dkt. 77).[2] The Court has discretion to require strict compliance with the

---

[2] Because Lucas is proceeding *pro se*, the Postal Service served her with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 41). This notice explained how to respond to the Post Service's summary judgment motion and Rule 56.1 Statement and cautioned Lucas that the court would assume she did not

local rules and "even pro se litigants must follow these rules." *Welcher-Butler v. Brennan*, 619 F. App'x 550, 550 (7th Cir. 2015) (citations omitted). *See also Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.") (citations omitted).

Local Rule 56.1 requires, among other things, the party opposing summary judgment provide "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The Court deems the Postal Service's LR 56.1 facts admitted because (1) Lucas failed to respond to them; and (2) they are supported by citations to the record. While the Court liberally construes Lucas' pleadings and draws reasonable inferences from the evidence in her favor, the Court is not obligated "to scour the record looking for factual disputes." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (citations and quotations omitted); *Gogos v. AMS Mech. Sys.*, 678 F. App'x 411, 413 (7th Cir. 2017) (when a party opposing summary judgment does not cite to admissible evidence to deny asserted undisputed facts by the moving party, the facts are deemed admitted).

## II. Discrimination and Retaliation Claims

To succeed on her Title VII discrimination claims, Lucas must demonstrate that "(1) [s]he is a member of a class protected by the statute, (2) that [s]he has been the subject of some form of adverse employment action (or that [s]he has been

---

dispute the Postal Service's factual contentions if she failed to follow the procedures in Local Rule 56.1.

subjected to a hostile work environment), and (3) that the employer took this adverse action on account of [her] membership in the protected class." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (citation omitted). "To prevail on an age-discrimination claim, the plaintiff must prove that his age was the 'but-for' cause of the challenged job action . . . that, but for his age, the adverse action would not have occurred." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (internal citations and quotations omitted). Additionally, to survive summary judgment on her retaliation claims, Lucas must show that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). The Seventh Circuit has "discarded the distinction between direct and indirect methods of proof in employment discrimination cases and clarified that all evidence must be evaluated as a whole." *Id.* at 715 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016)). At the summary judgment stage, courts are simply to determine whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse employment actions]." *Ortiz*, 834 F.3d at 765; *see Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532–33 (7th Cir. 2017) (applying *Ortiz* to ADEA claim); *Lauth* 863 F.3d at 716 (applying *Ortiz* to retaliation claim).

The Postal Service argues that summary judgment should be granted in its favor because: (1) Lucas cannot make her *prima facie* case for any of the discrimination or retaliation claims addressed in her 2011 EEO complaint; and (2)

that the claims made in her 2014 EEO complaint are time barred. The Court will first address the claims alleged in Lucas 2011 EEO complaint.[3]

## A. Lucas's 2011 EEO Complaint

### *Claim 1*

Claim 1 of Lucas' 2011 EEO complaint alleges unlawful sexual harassment due to a remark made by her immediate supervisor, Dwayne Russell, outside of her presence in August 2011 that "[t]he only thing I miss about Lucas is her big titties."[4] (Dkt. 49 at 1). Lucas alleges that Russell also contacted her by phone and related the same comment. *Id.* She asserts that the remark, both outside of her presence and over the phone, had a pronounced effect on her due to her religious beliefs, created tension between her and her supervisor, and altered the working environment. *Id.*

For Lucas to survive summary judgment on a sexual harassment claim under Title VII, she must show: "(1) her work environment was objectively and subjectively offensive, (2) the harassment she complained of was based on her gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive work environment, and (4) there is a

---

[3] Although Lucas does not support many of her claims with legal authority nor does she specify the statute under which she is pursuing the claim, the Court "construe[s] *pro se* filings liberally and [will] address the discernable arguments." *Wilson v. Brennan*, 724 F. App'x 466, 469 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)).

[4] It is undisputed that the Postal Service investigated this incident and concluded there was no basis for the allegation of sexual harassment and that Lucas should be disciplined for "lying or falsification." (Dkt. 40 at 5) (quoting Dkt. 40-10 at 3)

basis for employer liability." *Swyear v. Fare Foods Corporation*, 911 F.3d 874, 880 (7th Cir. 2018). To determine whether the conduct is severe or pervasive enough to alter the conditions of employment, courts "must consider the severity of the alleged conduct, its frequency, whether it is physically threatening or humiliating (or merely offensive), and whether it unreasonably interferes with the employee's work performance." *Robinson v. Perales,* 894 F.3d 818, 827–28 (7th Cir. 2018), *reh'g denied* (July 24, 2018). The Seventh Circuit has noted that because courts "assume employees are generally mature individuals with the thick skin that comes from living in the modern world, . . . , employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Swyear*, 911 F.3d at 880.

The Court assumes that Russell's conduct was subjectively serious and offensive to Lucas but finds that it does not constitute "harassment [that is] so severe or pervasive that it alters the conditions of the plaintiff's employment." *Thompson v. Mem. Hosp. of Carbondale,* 625 F.3d 394, 401 (7th Cir. 2010). Russell's isolated remark, while certainly inappropriate, particularly by a person in a supervisory position, falls short of what the Seventh Circuit has required to constitute a hostile or abusive work environment. *See Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002) (finding that eight gender-related comments made over the course of plaintiff's employment, including that "the only valuable things to a woman is that she has breasts and a vagina," was insufficient to demonstrate a hostile work environment); *Scruggs v. Garst Seed Co.*, 587 F.3d 832,

840–41 (7th Cir. 2009) (finding that "occasional inappropriate comments, including that [plaintiff] was 'made for the back seat of a car' and looked like a 'dyke' . . . do not rise to the level of an objectively hostile work environment under Title VII."); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) ("occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable."); *Thompson,* 625 F.3d at 401 (finding that a few offensive statements made directly to plaintiff and a racist statement made outside of plaintiff's presence did not "reflect severe or pervasive enough conduct to be actionable under Title VII"); *McPherson v. City of Waukegan,* 379 F.3d 430, 439 (7th Cir. 2004) (noting that "lamentably inappropriate" behavior did not result in a hostile work environment "due to the limited nature and frequency of the objectionable conduct."). While the Court in no way condones the alleged misconduct, it is insufficient to support of claim for sexual harassment under Title VII.

### Claim 2

In Claim 2, Lucas alleges that she did not receive night differential pay after being temporarily reassigned to a night shift from September 14, 2010 through October 14, 2010 pending completion of an internal investigation of her sexual harassment complaint against Russell. She claims that the failure to provide her a pay adjustment constitutes harassment and retaliation for her initiating an EEO complaint. (Dkt. 49 at 1).[5] Lucas alleges that after numerous email requests, in

---

[5] Lucas does not appear to claim that the move itself to night shift pending investigation of her EEO allegation was discriminatory or retaliatory. In her EEO investigation affidavit she acknowledges

December 2010, she received some but not all of the night differential pay she was owed. Since this adjustment did not cover the complete amount owed she had to make another request. In her July 2018 deposition, Lucas could not recall if she is still owed additional pay. (Dkt. 40 at 7).

To succeed on a retaliation claim, Lucas must show that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Lauth, Inc.*, 863 F.3d at 716. In both discrimination and retaliation claims, the Seventh Circuit "no longer recognize[s] a distinction between direct or indirect evidence" and instructs courts to "consider all of the record evidence to determine whether a causal link exists." *Id.* (citing *Ortiz*, 834 F.3d at 765–66). "[C]ausation can be established by circumstantial evidence, which includes, for example, suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently . . . [or] any other evidence from which an inference of discriminatory intent might be drawn." *Abrego*, 907 F.3d at 1014–15 (internal quotations omitted).

The only evidence Lucas offers is the temporal proximity of the initiation of her EEO complaint and her difficulties receiving a pay adjustment. But "suspicious timing alone is almost always insufficient to survive summary judgment." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). The Seventh Circuit has found that "a short gap may permit a plaintiff to survive summary

---

that she was told by the Postal Service that the move was necessary to separate her from the supervisor she accused of harassment. She stated she believed that this was the "true reason" for her reassignment. (Dkt. 40 at 6; Dkt. 40-3 at 11–12). She does not offer evidence that the reason given for her move was pretextual.

judgment only if there is also other evidence that supports the inference of a causal link." *Abrego*, 907 F.3d at 1014–15 (internal quotations omitted). Lucas offers no other evidence of a discriminatory or retaliatory motive other than her feeling. This is not enough. *Wilson v. Rundle,* 774 F. App'x 989, 991–92 (7th Cir. 2019) (affirming grant of summary judgment where "[b]eyond his speculation, Wilson provides only what he calls a "suspicious chronology of events."). Nor does Lucas present any evidence that the Postal Service's explanations, payroll error and oversight, are pretextual. Without any evidence of a causal link other than suspicious timing, her claim fails.

**Claim 5**:

On October 27, 2010, Lucas requested eight hours of FMLA sick leave for November 4, 2010 to take her mother to a doctor's appointment. (Dkt. 40 at 8). Lucas' request for sick leave was approved "pending documentation" but Lucas did not provide the requested documentation until over five months later in April of 2011. (*Id.* at 8-9). She was charged eight hours leave without pay and was told by Russell in April 2011 that too much time had elapsed before receiving documentation and her FMLA request would not be honored. (*Id.* at 9). In Claim 5, Lucas complains that this eight hours of FMLA sick leave "was input[ted] incorrectly and was not corrected" as a means of harassment and retaliation. (Dkt. 40 at 4; Dkt. 40-7 at 1). Lucas argues that the Postal Service requested documentation as a form of harassment and retaliation because she was not on any type of restricted leave status. (Dkt. 49 at 2). However, Lucas offers no evidence of a

discriminatory intent other than her belief and the fact that this was close in time to when she complained of harassment. This is insufficient to survive summary judgment. *Wilson,* 774 F. App'x 989 at 991–92; *see also Tarpley v. City Colleges of Chicago,* 752 F. App'x 336, 348 (7th Cir. 2018) ("Inconvenient though it may have been to submit various paperwork while in the midst of contending with her health concerns, being required to submit standard paperwork and having that paperwork reviewed to ensure proper administration of her FMLA requests does not even come close to constituting a hostile work environment.").

***Claim 9***:

In late March 2011, Lucas was told that a "climate survey" had revealed "numerous complaints" by employees about Lucas including "I'm told never doing a good enough job. I'm told at least twice a week I'll be fired," and "Our manager Lucas created a very hostile environment and does not like cooperation, rather divide and conquer attitude --she pits employees against each other." (Dkt. 40 at 10–11; Dkt. 40-20 at 3). From April 5, 2011 through October 24, 2011, Lucas was re-assigned from the Gary Main Post Office to a position at the Gary Processing and Distribution Center ("P&DC"). (Dkt. 40 at 11).

In Claim 9, Lucas alleges that this re-assignment was an act of discrimination or retaliation. Conwell, manager of post office operations, explained in his EEO affidavit that Lucas was given the involuntary reassignment because she had been "the subject of numerous grievances relative to her specifically creating a hostile work environment: and that the issues rose to such a level that

manager labor relations officials for the Postal Service became involved. (Dkt. 40 at 11; Dkt. 40-22 at 13). Lucas' pay was not affected by this re-assignment, (dkt. 40 at 11), but Lucas was demeaned because she had to report to a Postmaster Level 20 when she was a Level 21 Customer Service Manager in Gary Indiana, (dkt. 49 at 3). Lucas has presented no evidence of a discriminatory or retaliatory animus. Nor has she presented any evidence that the reason for the re-assignment given by Conwell was pretextual. To prove that the proffered reasons are pretextual, Lucas must "come forward with evidence that at least raises the inference that the Postal Service's offered reason is a 'phony excuse.'" *Hill v. Potter*, 625 F.3d 998, 1004 (quoting *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 561 (7th Cir. 2004)). Lucas has not done so here. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 724 (7th Cir. 2018) (internal citations and quotations omitted) ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge. [I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.").

*Claim 10*:

In Claim 10, Lucas complains about the fact that she was not interviewed for the Postmaster East Chicago position. She claims this was in retaliation for "not writing up an employee that did nothing wrong." (Dkt 49 at 3). Lucas offers no evidence that the decision makers had a discriminatory or a retaliatory motive

when they decided not to interview her. Lucas' accusations and speculation are not enough to survive summary judgment. *See also Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) ("[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." (quoting *Lucas v. Chi. Transit Auth.,* 367 F.3d 714, 726 (7th Cir. 2004))); *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist. 163,* 315 F.3d 817, 822 (7th Cir. 2003) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (quotation marks omitted)).

Lucas claims that Theresa Thurmond ("Thurmond"), a person with the same Knowledge, Skills and Ability ("KSA") scores as Lucas, was granted an interview. But she offers no evidence to back up this claim, nor does she rebut the evidence proffered by the Postal Service that Thurmond was not actually interviewed for the position. (See Dkt. 50 at 5–6) (citing Dkt. 40-24 at 7; Dkt. 40-25 at 6–7). The review board assessing applications for the position consisted of Cheryl Graeber, Dwayne Russell, and Mary Spradel, whom all expressed concerns about the quality of her application and her suitability for the position. Russell indicated that he had concerns about her performance and that she was not one of the top five individuals recommended for the position stating, "It's not about possessing the requirements. It's about being a Leader, the level of commitment, being compliant in the duties of a Postmaster, accepting constructive criticism, and fostering a positive working environment. Those attributes Ms. Lucas need improving even to this day." (Dkt. 40

at 12–13) (citing Dkt. 40-9 at 28). Graber indicated that Lucas' application was "very unprepared," stating that Lucas "listed her jobs that she has held but failed to put in descriptions of what she herself had done in those positions. . . Her training hadn't been updated since 2008, and I felt that her KSA's were extremely weak. For someone with her experience in level 20-21's the examples should have been stronger and more specific. There was not one example of a specific thing she personally did to illustrate the particular KSA. The application was in my opinion a weak application." (Dkt. 40 at 13) (citing Dkt. 40-24 at 4). Spradel indicated that Lucas "did not demonstrate the KSAs to the depth, degree, and relevancy to be competitive with the recommended applicants." (Dkt. 40 at 13) (citing Dkt. 40-25 at 7). Lucas offered no evidence other than her belief that these reasons were pretexual. *See Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 602 (7th Cir.2001). ("And without proof of a lie [as to what the employer believed] no inference of discriminatory motive can be drawn.").

### *Claim 11*:

In Claim 11, Lucas alleges that she was denied her requested week for annual leave in July 2011 due to harassment and retaliation. Lucas was informed that her requested vacation dates in July were not available because other managers and supervisors had already requested those dates. (Dkt. 40 at 15) (citing Dkt. 40-2 at 74-75 and Dkt. 40-26 at 4). Lucas introduces no evidence of a discriminatory or retaliatory motive, nor does she offer any evidence that the reason she was given, that those July dates were not available, were pretext. Further,

Lucas cannot show the threshold criteria that this denial of vacation leave is an adverse employment action. See *Mahran v. Advocate Health & Hosps. Corp.*, No. 17 C 5730, 2019 WL 952131, at *10 (N.D. Ill. Feb. 26, 2019) ("But the refusal to honor an employee's preferred vacation schedule amounts to merely an inconvenience and does not materially alter the terms and conditions of the employee's job."); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (finding that refusal to approve annual leave requests did not constitute an adverse employment actions); *Mackenzie v. Potter*, 219 F. App'x 500, 503 (7th Cir. 2007) (denial of occasional requests for leave did not constitute a material adverse employment action).

In Claim 11, Lucas also alleges that due to harassment and retaliation she was required to work two Saturdays in September 2011 and was not granted personal leave for these days when requested. In September 2011, Lucas was given a "rural count" assignment where she was required to work six days a week for two weeks. She requested "personal leave" to make up for the two Saturdays she was required to work. Conwell did not grant her request, indicating that there is no leave category denoted "personal leave," and there is no policy that would give Lucas the right to additional days off in this circumstance. (Dkt. 40 at 14) (citing Dk. 40-3 at 50–51). Lucas does not dispute that the applicable Postal Service policy from the Postal Service Employee and Labor Relations Manual specifies that exempt employees, such as Lucas, are not limited to the basic full-time workweek consisting of five regularly scheduled eight-hour days within a service week and can be "assigned as needed." (Dkt. 40 at 14) (citing Dkt. 40-26 at 11). Further, the policy

indicates that even for non-exempt employees who are required to work more than a forty-hour work week, "[e]quivalent time off from work is not authorized." (*Id.*).

Lucas argues that Manager Shawanda Prater, Luvada Darling, Jacob Turner and Jim Gordon were granted personal leave, and Russel was given an investigative interview for erroneously authorizing this leave against Postal Service Policy. (Dkt. 49 at 3–4). Lucas provides no information regarding these comparators for the Court to determine whether they were similarly situated. But the fact that Russell was disciplined for awarding personal leave against Postal Service policy, does not demonstrate that Conwell's proffered reason for denying Lucas' request for personal leave, based on policy, is pretextual. Without evidence of discriminatory or retaliatory intent or pretext, this claim cannot survive summary judgment. *See Allen v. Potter*, 115 F. App'x 854, 860–62 (7th Cir. 2004) (affirming summary judgment where plaintiff could not demonstrate that the reason offered for her denial of several leave requests was a pretext).

**Claim 14**:

In Claim 14, Lucas alleges that as retaliation for initiating EEO claims, she was not paid Night Differential pay for the two Saturdays in September 2011 that she was forced to work, the same two dates referenced in Claim 11. Lucas does not respond to the Postal Service's statement of facts indicating that according to Postal Service policy, exempt employees are not entitled to overtime or compensatory time off. (Dkt. 40 at 14). Lucas also does not dispute Conwell's testimony that he routinely requires exempt employees, like Lucas, to work six days

a week or more than eight hours in a day, and those employees are not paid additional compensation. (Dkt. 40-22 at 54). Lucas offers no evidence that Conwell acted with discriminatory or retaliatory motive when he refused to pay her Night Differential pay for September 17, 2011 and/or Saturday, September 24, 2011. In the absence of such evidence, this claim fails.

### *Claims 3, 4, 6, 7, 8, 12 and 13*

The Postal Service argues that the remaining 2011 EEO claims fail because they do not describe an actionable adverse employment action. (Dkt. 46 at 19). The Court agrees.

Establishing a *prima facie* case on a discrimination or retaliation claim "requires sufficient evidence of a materially adverse employment action." *Boss v. Castro*, 816 F.3d 910, 917–19 (7th Cir. 2016). *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (noting that "the threshold issue [courts] must resolve is whether [an adverse employment action] has even occurred."). For discrimination claims, "[a] materially adverse employment action is one which visits upon a plaintiff 'a significant change in employment status.' Such changes can involve the employee's current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Boss*, 816 F.3d at 917 (citation omitted). In the retaliation context, the challenged action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard v. McDonald*,

829 F.3d 844, 856 (7th Cir. 2016) quoting *Roney v. Illinois Dep't of Transportation*, 474 F.3d 455, 461 (7th Cir. 2007).

"[N]ot everything that makes an employee unhappy is an actionable adverse action." *Madlock,* 885 F.3d at 470 (quotation omitted). "Otherwise, minor and even trivial employment actions that an . . . employee did not like would form the basis of a discrimination suit." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (internal quotations omitted). "[A]n adverse action can be a single action or event, such as a discharge, or a series of lesser actions that, when considered together, create 'a discriminatorily hostile or abusive environment.'" *Jha v. Shulkin*, No. 14 C 9041, 2018 WL 1508528, at *5–6 (N.D. Ill. Mar. 27, 2018), *motion for relief from judgment denied*, No. 14 C 9041, 2018 WL 6981029 (N.D. Ill. Dec. 14, 2018) (quoting *Boss*, 816 F.3d at 917). The Court will first look at these claims individually and then collectively to determine whether they create a hostile work environment.

Lucas' claim that she was assigned to a "retail count" on October 20, 2010, which could have been assigned to a different supervisor, (Claim 3) does not constitute a retaliatory or discriminatory adverse action.[6] To qualify as an adverse action, an employee "must suffer something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Boss*, 816 F.3d at 918–19, quoting *Hobbs v. City of Chi.,* 573 F.3d 454, 463–64 (7th Cir. 2009); *see also Wilson*, 724 F. App'x at 469 (finding that a "one-time shift change does not rise to the level of a discriminatory adverse action."); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534,

---

[6] It is undisputed that Lucas did not perform the retail count but assigned it to a co-worker. (Dkt. 40 at 8).

539 (7th Cir. 2007) (harder work assignments do not amount to an adverse employment action) (citing cases); *Griffin*, 356 F.3d at 829 (same) (citing cases). Similarly, Lucas' claims that she was subject to an investigative interview in November 2010 (Claim 4); that she was issued a letter of warning on November 24, 2010 (Claim 8); and that she was issued letters of concern in November and December in 2010 and January of 2011 (claim 12) do not rise to the level of retaliatory of discriminatory adverse actions. She describes no "tangible job consequences" stemming from these actions. *Boss,* 816 F.3d at 919 ("Unfair reprimands or negative performance reviews, unaccompanied by tangible job consequences, do not suffice [as evidence of material adversity]"); *see also Lauth*, 863 F.3d at 717 (written warnings and negative performance reviews are not adverse employment actions); *see also Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (same) *Griffin*, 356 F.3d at 829 (same) (citing cases).

Her claim that her requests to meet with Russell and Conwell were ignored and met with a "negative" and "provoking" attitude (i.e. Russel responded to her email stating, "So what do you want!") (Claim 6) also falls short of an actionable adverse action. *Smith v. Evans*, No. 18 C 8075, 2019 WL 6327423, at *8 (N.D. Ill. Nov. 25, 2019) (finding that failure to diligently communicate with plaintiff about the status of his grievance and arbitration, and failure to return an email did not constitute an actionable discriminatory or retaliatory adverse employment action); *Griffin*, 356 F.3d at 829 ("General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and

pervasive."); *Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1107–08 (7th Cir. 2012) ("[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers' are not actionable under Title VII") (internal quotations omitted). Equally deficient are her claims that she was falsely accused by Russell of calling a fellow coworker a bitch (Claim 7) and was accused of breaking a photo copier in December 2010 (Claim 13). Russell admits that he asked Lucas if she called her coworker a name but did not pursue the matter when Lucas denied it. Russell was investigating a complaint. Likewise, Lucas' allegation that her supervisor emailed her saying, "Now the copier is broken" does not rise to the level an adverse employment action. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) ("the adverse employment action requirement [is used] to distinguish meritorious cases from trivial personnel action[s].") (internal quotations omitted); *Boss*, 816 F.3d at 918–19 (The "anti-retaliation provision does not protect against petty slights, minor annoyances, and bad manners").

Even taken together, these claims do not amount to a hostile work environment. To defeat summary judgment on a hostile work environment claim, Lucas must offer evidence that "(1) the work environment was both objectively and subjectively hostile; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920. "In determining whether a workplace is objectively hostile, [courts] consider the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Alamo v. Bliss*, 864 F.3d 541, 549–50 (7th Cir. 2017) (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). "[A]lthough a workplace need not be hellish to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment [a]re altered." *Tarpley*, 752 F. App'x at 347 (internal quotations and citations omitted).

Here, Lucas' evidence "falls far below the threshold for a hostile work environment." *Jha*, 2018 WL 1508528, at *6, *motion for relief from judgment denied*, No. 14 C 9041, 2018 WL 6981029 (N.D. Ill. Dec. 14, 2018). Looking at the totality of the circumstances, Lucas presents a number of separate incidents that even when taken together are not severe or pervasive enough to constitute a hostile workplace. *See Griffin*, 356 F.3d at 829 (refusal to "approve annual leave requests" even when combined with unfair discipline, letters of warning, increased responsibilities, transfer to a more distant facility, new shift and denial of permit parking was not an adverse employment action); *Boss*, 816 F.3d at 920 (affirming summary judgment finding that plaintiff could not demonstrate retaliatory harassment when he only presented "a mishmash of complaints about overwork rather than about a place permeated with intimidation, ridicule, and insult."); *Watson v. Potter*, 351 F. App'x 103, 105–06 (7th Cir. 2009) (plaintiff could not establish an adverse employment action with regards to warning letters, a negative performance evaluation, denial of leave requests and incorrectly being marked as AWOL).

For these reasons, the Court finds that none of the claims alleged in her 2011 EEO complaint survive summary judgment.

**B. Claims Alleged in Lucas's 2014 EEO Complaint**

The Postal Service contends that Lucas' claims arising out of her 2014 EEO Complaint are time barred because she failed to contact an EEO Counselor within 45 days of the alleged discriminatory or retaliatory action. Pursuant to 29 C.F.R. § 1614.105, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must . . . initiate contact with a [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." "Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII of the Civil Rights Act of 1964." *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

The regulations allow the extension of "the 45–day time limit . . . when the individual shows that [1] he or she was not notified of the time limits and was not otherwise aware of them, [2] that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, [3] that despite due diligence he or she was prevented by circumstances beyond his or her

control from contacting the counselor within the time limits, or [4] for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). Lucas became aware of the alleged facts that form the basis of her 2014 EEO Complaint on January 22, 2014; she made her initial contact with the EEO office on March 27, 2014, more than two weeks after the deadline to initiate contact with an EEO counselor had passed. (Dkt. 50-1 at 1). Lucas has not asserted that she was unaware of the EEO Complaint process or of the necessity of contacting an EEO Counselor within 45-days of the alleged discriminatory event. Rather, in her response, Lucas alleges that her claims were timely because she "was off on sick leave." (Dkt. 49 at 4). Other than this one statement, she offers no evidence that she acted with due diligence or that being on sick leave prevented her from contacting the counselor. Without more, Lucas has failed to demonstrate an extenuating circumstance that would excuse missing the deadline. Accordingly, the Court finds that these claims are time barred and the Postal Service is entitled to summary judgment. *See Leach v. Brennan*, No. 15 C 11392, 2018 WL 4590299, at *4–5 (N.D. Ill. Sept. 25, 2018).

## CONCLUSION

For the stated reasons, the Postal Service's motion for summary judgment [39] is granted. The Clerk is directed to enter judgment and terminate the case.

E N T E R:

Dated: January 10, 2020

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge